## White v. The State.

Where a person borrows a chattel, with the intention to convert and appropriate it to his own use, and afterwards converts it to his own use, the crime is larceny, not swindling, under the statute.

Where the prisoner's counsel asked the Judge, after he had given the charge, that if they had a reasonable doubt, they must acquit the prisoner, which the Judge refused, this Court said, This is, no doubt, the law, and it had been substantially given in the charge they, the jury, had received, when they were told that they must find according to the facts of the case; and the Judge could not be called upon to repeat the charge.

Where the defendant was charged with the larceny of a gun, which he had borrowed, on pretence of going a-hunting next day, and had not returned, it was held that evidence that he hired a horse next morning to go to a place near by, but went off in another direction, and sold the horse, was admissible to show the intention with which he had borrowed the gun.

To warrant a conviction on an indictment for larceny, where the prisoner borrowed the article charged to have been stolen, the conversion of the article to his own use, by the prisoner, must be proved; that he failed to return it, though supported by proof of a fraudulent intent, at the time of the borrowing, is not sufficient.

Appeal from Brazoria. There was proof that the defendant never returned the gun; that he sold the horse; and other circumstances showing an evil state of mind at the time. The defendant excepted to the admissibility of the evidence of these circumstances. The charge, asked by the defendant,

* The remittitur having been entered, the judgment was affirmed at the costs of the appellees.

respecting a reasonable doubt, was as follows: "Also, that "the affirmative remains on the State, who must prove beyond "a reasonable doubt. Doubts to benefit of prisoner."

*A. P. Thompson,* for appellant.

*Attorney General,* for appellee.

LIPSCOMB, J. The appellant was indicted in Brazoria county, for stealing a rifle gun, of the value of fifty dollars, the property of Davis; he was convicted of the offence charged, and sentenced to two years' hard labor in the penitentiary. There was a motion for a new trial, which was overruled, and an appeal to this Court.

There are several grounds assigned for error, but the only material points to be considered, are, error in the charge of the Court upon the law, and the refusal to grant a new trial. The gun had been obtained by the prisoner, under the following circumstances, viz: The prisoner applied to the prosecutor for the loan of his rifle gun to go a-hunting; the prosecutor supposed, the next day. Prisoner had frequently before borrowed it for the same purpose. Prosecutor delivered the gun to prisoner. On the next morning, prisoner procured a horse from a person in the same village, as he said, to ride down to Brazoria, to be returned the evening of the same day, or the next, if, as he said, he should get into a spree. He did not go to Brazoria, but went in an opposite direction, sold the horse and did not return at all, until he was brought back as a prisoner. The statement of facts does not show what was done with the gun; there is no proof that the prisoner had converted it to his own use. The Judge charged the jury, that if they believed from the evidence, that at the time the prisoner obtained possession of the gun, under the pretence of borrowing it, he intended to convert it to his own use, it was a felony, and they must find him guilty. But if such was not his intention, at the time he obtained the possession, the subsequent conversion did not make it felony.

In this kind of cases, the distinction between larceny and trespass has been in many cases so refined as to have lead to much confusion, if not conflict of decision in England ; and the leading cases have been commented on by Mr. East, in his Pleas of the Crown, and, more recently, the same cases have been reviewed, and the principles upon which the distinction is founded, more distinctly and clearly defined by Mr. Roscoe, in his Criminal Evidence.    (Roscoe Crim. Ev. p. 479 to 498, inclusive.)    In England, they have a statute, in its provisions not unlike our own, making it a misdemeanor to obtain goods by false tokens, or false pretences.    Our own statute is in the following words, " that whoever shall falsely " and deceitfully obtain, or get into his possession, any money, " goods, chattels, notes, or bank bills, by color and means of " some false token, or under any false pretence whatever, on " conviction thereof, shall be fined in a sum not exceeding one " thousand dollars, and shall be imprisoned not exceeding two " years, at the discretion of the Court."    (Hart. Dig. Art. 437.)

I have found nowhere the distinction more clearly stated between larceny at Common Law, and the statutory misdemeanor, than in the following extract from Alison's Prin. Crim. Law of Scotland, 259, cited by Mr. Roscoe, p. 488 : " When possession is obtained by such false representations, as " induce the owner to sell or part with the property, the crime " is swindling."    " But a variety of cases frequently occur, " in which the possession is obtained, not on any contract or " agreement adequate to pass the property, but on some in- " ferior title adequate to give the prisoner the right of interim " custody.    The distinction between such cases and those in " which the property is obtained on false pretence, lies here : " that, in the one case, the proprietor has agreed to transfer " the property, and therefore he has only been imposed upon " in the transaction ; in the other, he has never agreed to part " with his property, and therefore the subsequent appropria- " tion is theft."

This distinction seems to be very clear.    In the one case, the

owner intends only to part with the possession of his proper-
ty, for temporary purposes, without ever intending to part
with the property itself; and in the other, he has been, under
false pretences, induced to part, not with the possession only,
but with his right of property in the article itself.

This distinction is laid down as correct by the Criminal
Law Commissioners. In their report they say, " The taking
" and carrying away are felonious where the goods are taken
" against the will of the owner, either in his absence, or in a
" clandestine manner, or where possession is obtained either by
" force or surprise, or by any trick, device, or fraudulent ex-
" pedient, the owner not voluntarily parting with his entire
" interest in the goods, and where the taker intends, in any
" such case, fraudulently to deprive the owner of his entire in-
" terest in the property, against his will." (1 R. 16, Roscoe,
p. 469.) And this principle can be extracted from the several
cases cited by Mr. Roscoe, and commented on by Mr. East,
referred to above.

The counsel for the appellant would, by his argument, de-
stroy the distinction in cases of this character between larceny
at Common Law, and misdemeanor under the statute, for ob-
taining the goods by a false pretence, and that the offence was
punishable as a misdemeanor under the statute, and not as
larceny at Common Law.

We believe that the distinction is clear, as has been shown;
and that in this case, if the owner of the gun had only con-
sented to a temporary transfer of the possession, without any
intention to part with his property therein, and the prisoner,
when he applied to him for the loan to be used in a particu-
lar way, intended to convert it to his own use, or to deprive
the owner of his property, and did so convert it to his own
use, it was a felony at Common Law, and not a misdemeanor
under our statute.

We believe that there is no available objection to the charge
of the Judge, to the jury, on the law of the case—that it was
fairly presented to them. The prisoner's counsel asked the

Judge, after he had given his charge, to charge them, if they had a reasonable doubt, they must acquit the prisoner. This is no doubt the law, and it had been substantially given in the charge they, the jury, had received, when they were told that they must find according to the facts of the case; and the Judge could not be called upon to repeat the charge.

We perceive no objection to the admissibility of the evidence in relation to the taking of the horse. It was a circumstance showing and explaining the intention of the prisoner when he obtained possession of the gun, under the pretence of a loan, to go a hunting with it.

We, however, believe that the transcript of the record does not show that the fact of a conversion of the gun was established with that legal certainty, required in criminal proceedings. The intention and the conversion, were both essential elements in this case, to constitute the larceny charged in the indictment. The presumption is that the gun had been converted by the prisoner to his own use, depriving the owner of his property, or that the prisoner had failed to account for it, and, perhaps, this presumption would sustain a verdict in a civil suit; we, however, regard the rule to be different in criminal cases, and that nothing must be left to presumption; that it must be shown to have been in proof, in criminal cases. It will be seen that in every one of the numerous cases of this kind, commented on by Mr. East, and collated by Mr. Roscoe, it is shown that the conversion or appropriation by the prisoner, was proved. For this error, the judgment is reversed, and the case remanded to the District Court of Brazoria county, with instructions to the Clerk of that Court, to issue a *mandate* to the Sheriff of the county of Brazoria, requiring him to apply for and receive from the Superintendent of the penitentiary, the body of the appellant, Henry White, and him safely to keep in the jail of his county, until the next Term of the District Court for the said county, unless he, the said prisoner, shall give satisfactory bail, as required by law, for his appearance at the said Court. And it is hereby required of

the Superintendent of the said penitentiary, to surrender the body of the said Henry White, to the said Sheriff, or his lawful deputy, on application being made to him ; and the Clerk of the District Court, of Brazoria county, is further required to furnish the Sheriff, or his deputy, with a certified copy of this order, to be handed by him to the Superintendent of the Penitentiary when he applies for the prisoner, Henry White, to be sufficient authority to the said Superintendent to surrender the said prisoner to the said Sheriff, or his deputy.

Judgment reversed.