Montgomery Fly **CAMERON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 39056.

Court of Criminal Appeals of Texas.

Feb. 23, 1966.

Rehearing Denied April 27, 1966.

Luther E. Jones, Jr., Corpus Christi, Cofer, Cofer & Hearne, by Hume Cofer, Austin, for appellant.

James E. Barlow, Dist. Atty., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for felony theft; the punishment, two years.

Prosecution was upon an indictment for ordinary theft which charged that on or about the 24th day of September, 1964, the appellant did unlawfully and fraudulently take money of the United States of America of over the value of $50 from one Charles J. Hedlund.

It was shown by the state's evidence that in December, 1963, the appellant received as a gift from a woman in San Antonio two Cabochon emerald cuff links which had been specially cut and mounted by Julius Cohen, a jeweler in New York City. The two cuff links weighed 58.31 carats and had an appraised value of $3,400. It appears that the cuff links were not to appellant's liking and he contacted the jeweler, Cohen, relative to trading them for some other cuff links. Early in 1964, Cohen went to San Antonio and took the two cuff links back to New York with him. A number of letters were then written by appellant to Cohen and on March 30 appellant requested that the cuff links be returned to him. Cohen testified that they were immediately sent to appellant by registered mail and that later, in April, 1964, a trade was made whereby appellant would receive some sapphire cuff links, and the two emerald cuff links were returned to him (Cohen) in New York. Cohen testified that he had possession of the two emerald cuff links from the time he received them in April, 1964, until he delivered them in Houston to Sgt. Brookbank, of the Alamo Heights police department, in January, 1965. The two emerald cuff links were positively identified by Cohen and introduced in evidence as state's exhibit #1.

It was further shown that appellant had a jewelry floater policy with the Aetna Casualty and Surety Company of Hartford, Connecticut, and that on January 10, 1964, the same was amended by adding Item #14, described as one pair of gold

Cabochon emerald cuff links weighing 58.31 carats and valued at $3,400.

On July 27, 1964, appellant called the witness Travis Bailey, who was the representative of the Aetna Casualty and Surety Company in San Antonio, and reported that the two emerald cuff links had been lost. Bailey went to appellant's office, and appellant again stated that the cuff links had been lost, or had disappeared. At such time appellant requested that the loss not be referred to the police as he did not want any publicity in the matter.

Appellant's claim was thereupon referred to Charles Hedlund, a claims representative in San Antonio for the company. After investigation and a conference with appellant in which appellant stated to the adjuster that the cuff links were lost, Hedlund prepared a statement of claim which was referred to as a proof of loss and delivered it to appellant's office with a draft dated September 22, 1964, signed by the witness as representative of the Aetna Casualty and Surety Company, payable to appellant in the sum of $3,400. On September 23, 1964, appellant signed the proof of loss and on September 24, 1964, the draft was deposited to appellant's personal and separate account in the National Bank of Commerce in San Antonio.

Testifying as a witness in his own behalf, appellant swore that he did not return the two emerald cuff links to Cohen in April, 1964, and that he (appellant) had possession of them in San Antonio when they were discovered missing some time during the week of July 20, 1964. He further swore that the cuff links introduced in evidence as state's exhibit #1 were not the two missing cuff links.

▮ The court submitted the issue of appellant's guilt to the jury upon the state's theory of theft by false pretext and authorized the jury to convict appellant if they found from the evidence beyond a reasonable doubt that he obtained possession of the money from Charles J. Hedlund by fraudulently representing to him that he owned a set of cuff links which were lost, stolen, or misplaced.

The charge given by the court was substantially the same as that given in King v. State, Tex.Cr.App., 213 S.W.2d 541, which is set out in 5 Branch's Ann.P.C.2d 130–132, Sec. 2683.1.

We do not agree that the instruction given by the court omitted as an essential element of the offense the actual appropriation of the money. The charge, taken as a whole, included such element in the court's definition of the offense and application to the facts and fairly submitted the issue of appellant's guilt to the jury.

▮ Nor do we agree that the court erred in refusing to give a charge on circumstantial evidence. The testimony in the case is tantamount to direct evidence that appellant obtained the money from the injured party, Hedlund. It is the rule that where there is direct evidence that the accused took the property and his fraudulent intent is to be inferred from the main fact proven, no necessity exists for a charge on circumstantial evidence. See: Green v. State, 144 Tex.Cr.R. 221, 161 S.W.2d 1074, and cases there cited.

It is insisted that there was a fatal variance between the allegation in the indictment that the taking of the money was from the possession of Charles J. Hedlund and the proof because the evidence showed that Hedlund did not have the actual control, care, and management of the money at the time of the taking. Metzger v. State, 168 Tex.Cr.R. 268, 325 S.W.2d 396, is cited and relied upon in support of such contention.

The record does not support appellant's contention.

▮ The witness Hedlund, in whom possession of the money was alleged in the indictment, testified that he was the claims representative for Aetna Casualty and Surety Company and had held such posi-

tion for twelve years. He explained in detail how reserve funds were set up in his office to pay claims, and swore that he was authorized to pay the claim. As a representative of the company he was shown to be a special owner of the money, and the state was authorized to allege ownership in him. Art. 402, Vernon's Ann.C.C. P.; Kitchen v. State, 124 Tex.Cr.R. 358, 62 S.W.2d 144; Bradford v. State, 170 Tex.Cr.R. 530, 342 S.W.2d 319.

■ The fact that the draft issued to appellant was not paid until it was received by the drawee bank in Hartford, Connecticut, five days after being deposited in San Antonio does not support appellant's contention of variance. The record is clear that appellant received the money when the draft was deposited to his account in the bank in San Antonio on September 24. The fact that he received a draft, which he deposited, rather than money does not present a variance. Mc-Morries v. State, 161 Tex.Cr.R. 608, 279 S.W.2d 90.

Metzger v. State, supra, cited by appellant, is not applicable, because in that case the person in whom possession of the money was alleged in the indictment was not an officer, member, or investor in the corporation which lost the money and could not, in law, have been the special owner of the same.

Appellant insists that his conviction violates due process of law because the record does not show that there was evidence to support the jury's verdict in the case.

■ It is appellant's contention that because the court's charge authorized the jury to convict him upon a finding that he fraudulently represented that the set of cuff links was "lost, stolen, or misplaced" and there was no proof that he represented that the cuff links were stolen it is impossible to determine whether the verdict had any factual basis in the evidence.

While there was no proof that appellant represented that the cuff links were stolen, there was proof in the record that he represented that they were lost or misplaced. The general verdict of guilty can be applied to that portion of the charge submitting the question of his misrepresentation that they had been lost or misplaced, which has support in the evidence. 57 Tex.Jur.2d 66, Sec. 434; Blankenship v. State, 166 Tex.Cr.R. 51, 310 S.W.2d 579.

The contention is overruled.

In a most exhaustive brief and in oral argument, appellant insists that his conviction for theft by false pretext under the indictment for ordinary theft constitutes a denial of due process.

Appellant recognizes the many decisions by this court holding that a conviction for theft by false pretext under the provisions of Art. 1413, Vernon's Ann.P.C., may be had upon an ordinary indictment for theft but insists that these decisions are wrong and should be overruled.

It is insisted that the indictment for ordinary theft presented against appellant did not include all the essential elements of the offense of theft by false pretext—such as the element of appropriation—and therefore constituted a denial of his right to demand the nature and cause of the accusation against him, as guaranteed by the Sixth Amendment to the Constitution of the United States, which was made obligatory upon the States by the recent decision of the Supreme Court of the United States in Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. Cole v. State of Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644, among other authorities, is relied upon in support of appellant's contention.

■ It is also insisted that appellant's conviction under the ordinary theft indictment which omitted an essential element of theft by false pretext constituted a denial

of his right to equal protection of the law, under the Fourteenth Amendment to the Constitution of the United States, because an accused who was being prosecuted for the same offense upon an indictment for theft by false pretext would be protected by the rule that each essential element of the offense must be alleged or the indictment is fatally defective.

█ We have carefully considered the argument and authorities presented by appellant, and remain convinced that the decisions by this court holding that a conviction for theft by false pretext may be had upon a general indictment for theft are sound and should not be overruled.

Art. 1410, V.A.P.C., defines theft in general, as follows:

" 'Theft' is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

Art. 1413, supra, provides:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

Theft by false pretext, as defined in Art. 1413, supra, is but another form of theft.

Under the provisions of Art. 1413, supra, the only difference between theft by false pretext, defined therein, and ordinary theft is the circumstances by which the property comes into possession of the accused.

Under either statute, Art. 1410 or 1413, supra, to constitute theft the original taking must be wrongful and fraudulent.

In the early cases of Smith v. State, 35 Tex. 738, 739, and Maddox v. State, 41 Tex. 205, it was held that ordinary theft and theft by false pretext were not different offenses but only different in the facts and circumstances surrounding the taking, which need not be averred in the indictment.

█ We adhere to the holding that such facts and circumstances are evidentiary matters which need not be alleged.

Cole v. State of Arkansas, supra, cited by appellant, is not here applicable, because in that case the conviction of an accused was affirmed by the Supreme Court of Arkansas for an offense, under one section of a statute, for which he was neither charged nor tried in the trial court.

Here, appellant was charged, tried, and convicted for the one offense of felony theft as denounced and defined in Articles 1410 to 1419, Title 17, Chapter 8, of Vernon's Annotated Penal Code of this State.

DeJonge v. State of Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278, also cited by appellant, is not here applicable, because in that case the conviction was upon a charge not made in the indictment.

█ Finding the evidence sufficient to support the conviction, and no reversible error appearing, the judgment is affirmed.

Opinion approved by the court.